## NATHAN ROBINSON *vs.* CHARLES W. GREEN.

Where different lots are sold severally at auction, the sale of each is a distinct contract, and the auctioneer's commission accrues upon each complete sale, unless he has contracted with the owner for an entire sum as compensation for his whole service.

Hence, where an auctioneer sold, severally, numerous lots of standing wood, at the request of the owner, and part of the wood was within the limits of a county where the auctioneer had no authority, and was by law prohibited to sell ; it was *held* that he was entitled to recover of the owner compensation for selling those lots which were within the county where he was licensed and qualified to sell at auction.

An auctioneer sold, at the request of the owner, different lots of standing wood, part of which were not within the county where he had authority to sell at auction, and the purchasers took the wood and paid the owner therefor : The auctioneer afterwards paid to the Commonwealth the auction duty on the whole of those sales. *Held,* that he was entitled to recover of the owner the amount of that duty, in an action for money paid.

ASSUMPSIT to recover $4, for services rendered by the plaintiff, as an auctioneer, at the defendant's request, and $4.40, the amount of auction duties payable on the amount of sales made of the plaintiff's property at auction, by the defendant, and by him paid into the treasury of the Commonwealth.

The parties submitted the case to the decision of the court of common pleas, on the following facts agreed : Prior to December 5th 1839, the defendant signed and posted up, in Malden and South Reading, sundry notices, advertising a quantity of standing wood, which he owned, to be sold at auction, on said day, in lots. He applied to the plaintiff, who was then a licensed and qualified auctioneer in and for the town of Malden, in the county of Middlesex, to sell said wood, and the plaintiff sold it at auction accordingly, on said day, to the amount of $440 ; and the purchasers thereof afterwards cut and took it off, and paid the defendant for it at the prices bid. The plaintiff has since paid the auction duty on said sales to the Commonwealth. The defendant kept an account of the sums bid, and the purchasers' names, but has ever since refused to furnish such account to the plaintiff.

There were 76 lots of the wood thus sold, two of which were wholly in South Reading, in said county of Middlesex, and the others wholly in Chelsea, in the county of Suffolk. The plain-

tiff was upon the several parcels of land containing the lots of wood, at the time when he sold the respective lots. The towns of South Reading and Chelsea adjoin, and neither party knew, at the time of the sale, that any part of said wood was standing in the town of Chelsea.

It was agreed that the sum of $4 was a proper amount to be charged by the plaintiff for his services in selling the wood, if he was entitled to recover for the whole of those services.

The case came into this court on exceptions to the judgment rendered by the court below.

*Buttrick*, for the plaintiff.

*J. A. Andrew*, for the defendant.

SHAW, C. J. An auctioneer, by the Rev. Sts. *c.* 29, § 8, s prohibited, under a penalty, from selling any property out of the town for which, and by the selectmen of which, he is licensed. His authority was afterwards extended by *St.* 1837, *c.* 233, to all towns within the same county. This action is brought by the plaintiff, as an auctioneer, licensed for the town of Malden, for services in selling sundry lots of standing wood, being partly in the town of South Reading, in the county of Middlesex, to which the plaintiff's license extends, and partly in Chelsea, in the county of Suffolk, beyond the limits of that license. The action also embraces a claim for money paid, laid out and expended, being for the amount paid by the plaintiff for the auction duty.

The defence is placed on the ground that the claim of the plaintiff is entire; that part of it is a claim for services which were illegal, in selling property in the town of Chelsea, out of his county; and that the contract being entire, and the consideration, as to part at least, illegal, the action cannot be maintained. The answer of the plaintiff is twofold: 1st. That it being a sale of growing wood, it was parcel of the realty, and so was within the proviso of the Rev. Sts. *c.* 29, § 8, " that any parcel of real estate, lying partly in one town and partly in another, may be sold, within either of such towns, by an auctioneer of either town." Had this been all sold in one parcel, there certainly would have been more weight in the objection, and it

would then have been necessary to determine whether such a sale would have been a sale of real estáte, within the statute. It might depend on the terms of sale ; whether it was intended that the wood should stand any length of time, to be sustained and nourished by the soil ; whether there was, or whether it was intended there should be, a memorandum of the contract in writing, as of an interest in real estate, or otherwise. But we think this answer cannot be made, because the owner and auctioneer chose to sever it into distinct parcels, and did in fact sell it in distinct parcels. It is found that the wood, though growing on one tract of land, lying together as one parcel, was sold in seventy-six lots, seventy-four of which were wholly in Chelsea, and two wholly in South Reading. The reason of the proviso and exception above cited undoubtedly was, that if the law were otherwise, an owner of a tract of land lying partly in two towns, must forego the privilege of selling it at auction, or lose the benefit of selling it as an entire farm or parcel. This reason does not apply, when he divides it into several parcels for sale, divided by the town line.

2. But we think the other answer of the plaintiff is decisive ; that the plaintiff does not claim on an entire contract. The sale of each lot is a distinct contract. *Emmerson* v. *Heelis*, 2 Taunt. 38. *James* v. *Shore*, 1 Stark. R. 426. *Roots* v. *Dormer*, 4 Barn. & Adolph. 77. The plaintiff's claim for a compensation arises upon each several sale, and is complete on such sale. If there were an express promise to pay him a fixed sum, as a compensation for the entire sale, it would have presented a different question. Where an entire promise is made on one entire consideration, and part of that consideration is illegal, it may avoid the entire contract. But here is no evidence of a promise of one entire sum for the whole service. It is the ordinary case of an auctioneer's commission, which accrues upon each entire and complete sale. We do not see how the question can be answered, which was put in the argument, namely, supposing the plaintiff had stopped after selling the two lots lying in South Reading, which it was lawful for him to sell, would he not have been entitled to his commission ? If he would, we do not

perceive how his claim can be avoided, by showing that he did something else on the same day, which was not *malum in se*, but an act prohibited by law, on considerations of public policy. The court are of opinion, that the plaintiff's claim for a *quantum meruit* may be apportioned, and that he is entitled to recover for his services in the sale of the two lots.

In regard to the sum paid for the auction tax, we think, on equitable principles, the plaintiff is entitled to recover it. The defendant in fact employed the plaintiff to sell as auctioneer, and *de facto* he did sell. By force of the Rev. Sts. *c.* 9, § 14, the auctioneer is obliged to pay the tax to the Commonwealth, in the first instance, and it is to be deducted by him from the proceeds of the sale, which are supposed to pass through his hands, and ordinarily do so. But where the proceeds of sale do not pass through his hands, or where there are none, as for instance, where the property is bid in by the owner, but yet by the same chapter, § 10, the tax is declared due ; it must necessarily be considered as an ultimate charge to the owner. When, therefore, an *owner* of property retains an auctioneer to sell it, at public sale, it operates as a request of the owner to the auctioneer to pay the tax, which accrues to the Commonwealth, on 'ts being struck off. It is not competent for the defendant to say, that the land did not lie in Malden or South Reading, and that it was illegal for the plaintiff to sell it. Then the effect of the defendant's conduct was to request the plaintiff to pay the tax upon the whole sales ; and pursuant to that request, and before it was countermanded, and before any notice was given by the defendant, that he intended to contest the validity of the sale, the defendant paid the money. We think this was money paid by the plaintiff at the defendant's request ; that, therefore, on equitable grounds, the plaintiff has a good right to recover it, and that it is no answer to this part of his claim, that the sale at auction was made by the plaintiff without due authority, and that his act in making it was contrary to the prohibition of the statute.